STATE of North Dakota, Plaintiff, Respondent,

v.

Carl WEISSER, Defendant, Appellant.

Cr. No. 359.

Supreme Court of North Dakota.

Sept. 16, 1968.

C. J. Schauss, Mandan, for appellant.

Lester J. Schirado, Mandan, and Helgi Johanneson, Atty. Gen., and Donald R. Holloway, Asst. Atty. Gen., Bismarck, for respondent.

TEIGEN, Chief Justice.

The defendant has appealed from the verdict, the final judgment of conviction and from an order denying a new trial, as a result of his conviction of the crime of selling securities without being registered as a securities dealer or salesman.

The defendant raises two principal issues in his appeal. He asserts it was error for the trial court to consolidate the action against the defendant with a similar action against one Pius T. Weigel for the purpose of trial, and that a promissory note given by an individual for a personal loan is not a security within the meaning of the Securities Act contained in Chapter 10–04, North Dakota Century Code, and therefore defendant was not a dealer required to be registered under the Act as he was not engaged in the sale of securities.

The facts are not in dispute. The two defendants, Weisser and Weigel, together approached one Henry Entzel and stated that they wished to borrow $25,000.00, which would be repaid in 60 days. Mr. Entzel did not agree to loan them this amount of money but did loan them $2,-500.00 to be repaid in 60 days. The defendants in return gave Mr. Entzel a promissory note dated May 21, 1966, written on a standard note form furnished by the defendants in the amount of $3,000.00, payable in 60 days and bearing interest at 7 per cent per annum. The blank spaces on the form were filled in by the defendant Weisser and each defendant signed the note as a maker. The transaction was completed in the presence of Mr. Entzel. The defendants paid the sum of $400.00 to apply on this note but no additional payments

have been made. It is upon this transaction the defendants were charged.

It also appears from the record that on March 7, 1966, the defendants had borrowed $1,500.00 from Mr. Entzel at which time they gave him a promissory note in the amount of $1,800.00, which was paid about 40 days after the loan was made. The record also discloses several other similar transactions with other lenders, all participated in by the two defendants jointly as borrowers. They are as follows:

On April 20, 1966, the defendants borrowed $1,000.00 from one James Wanner.

On April 1, 1966, they borrowed $1,500.00, and

On April 20, 1966, the further sum of $4,000.00 from one Clarence J. Pulley.

On May 6, 1966, they borrowed $1,000.00 from one George Ferderer.

On May 12, 1966, they borrowed $5,000.00 from one Harry Tatley.

On May 18, 1966, they borrowed $1,000.00 from one Pete Privatsky, and

On May 24, 1966, they borrowed $5,000.00 from one Herbert Nathan.

In each of these transactions the defendants gave to the person from whom the money was secured a promissory note for a sum substantially greater than the amount loaned. All of the notes were made payable in 90 days, more or less, from the date of the transaction. Each note was written by the defendant Weisser in the presence of the lender and then signed by each of the defendants (Weisser and Weigel) and delivered to the lender. It is also clear from the record that the defendants, in negotiating for the loans, told the lenders that they had an opportunity to purchase corporate stock from a widow which they could sell at a substantially higher price to another person, but that the widow would not part with the stock until she was paid for it and the purchaser would not pay them the purchase price un-

til they delivered the stock. Therefore, they told the lenders they needed sums of money ranging all the way from $10,000.00 to $25,000.00 for the purpose of acquiring the stock from the widow and delivering it to the purchaser; that they would realize a substantial profit on the transaction and, therefore, as soon as the transaction was completed, they could repay the loans plus the bonus added as a part of the principal set forth in the promissory note. Thus it appears that during a period of two and one-half months, from March 6, 1966, to May 21, 1966, the defendants issued nine promissory notes for varying amounts in return for money received.

Both defendants were present and participated in each of these transactions.

Separate criminal actions were instituted against each of the defendants on the same transaction and charging the same crime. The trial court ordered, on the motion of the State, that the two actions be consolidated for the purpose of trial. The actions were consolidated and tried before a single jury. The jury was instructed that there were two separate actions; one against each of the defendants named, and that the actions had been consolidated for the purpose of trial only, and that the jury should consider them separately. It also directed that separate verdicts be returned in each case. Separate verdicts of guilty were returned by the jury.

The defendant Carl Weisser has appealed and the first question presented is whether, in the absence of a statute, it was error for the trial court to consolidate the two cases for trial. The appealing defendant has cited no authority supporting his contention and we have found none.

The record in this case discloses that the defendants might have been joined in one information and tried together. The charge in each case arose out of the same series of events and is based upon the same acts and transactions, constituting a single act, carried out under a common scheme or plan and was engaged in equally by both

defendants. No evidence was introduced that would not have been admissible against each defendant if tried separately except the attestation made by the North Dakota Securities Commission as to each defendant that he was not registered as a securities dealer or salesman during the time in question. This fact was not denied, by either defendant.

It appears that we do not have a statutory provision specifically providing that a trial judge may consolidate for trial defendants who have been separately charged with a crime arising from the same set of facts.

There is no reason that we see that the two defendants could not have been jointly charged in a single information. Section 29-21-07, N.D.C.C., and the decisions annotated under that section provide that defendants charged jointly in a criminal action are not entitled to separate trials as a matter of right. The granting of separate trials in such cases is largely within the discretion of the trial court and depends upon the circumstances from which it is apparent to the court that the ends of justice require.

South Dakota has passed on a similar situation where three men were charged in separate informations with the crime of rape. In passing on the question the court stated that there was no statutory authority for the consolidation for trial of separate informations, but held that the evidence disclosed that there was a common design on the part of all the defendants and that they could have been jointly charged in one information and thus there was no error resulting from the consolidation. State v. Best, 76 S.D. 220, 75 N.W.2d 913 (1956).

Wisconsin has also passed on the question. The Wisconsin Supreme Court held that the circuit court had jurisdiction to consolidate for trials separate indictments against three defendants who were charged with the same crime of murder and attempted murder and whether they should be so tried was discretionary with the trial court.

It appears Wisconsin had no statutes specifically providing for such consolidation. State ex rel. Nickl v. Beilfuss, 15 Wis.2d 428, 113 N.W.2d 103 (1962). In passing upon the question of whether the court abused its discretion, in ordering a consolidation for purposes of trial, the Wisconsin court held that where charges against three defendants were identical, and arose out of the same events, and the same witnesses were called in the case of each defendant, and no apparent antagonism was shown in connection with the defenses of the three accused parties, the court did not abuse its discretion in ordering a consolidation of the cases for trial. Cullen v. State, 26 Wis. 2d 652, 133 N.W.2d 284 (1965).

Other courts have also held that where persons are indicted separately it does not prevent their being tried jointly. People v. Schram, 1 Mich.App. 279, 136 N.W.2d 44 (1965); Commonwealth v. Gallo, 275 Mass. 320, 175 N.E. 718, 79 A.L.R. 1380 (1931). If there is an issue of fact common to all the indictments the determination of whether the consolidation of the actions for trial will impair the rights of the defendants or of the state rests in the sound discretion of the trial judge. Commonwealth v. Iannello, 344 Mass. 723, 184 N. E.2d 364 (1962). The Pennsylvania court has said that a joint trial is permissible if not advisable when the crimes charged grow out of the same acts and much of the same evidence is necessary for or applicable to both defendants. Commonwealth v. Snopek (1963), 200 Pa.Super. 455, 190 A.2d 161.

■ Under the Federal Rules of Criminal Procedure, two or more indictments or informations may be consolidated for trial if they could have been joined in a single indictment or information. Griffin v. United States, 272 F.2d 801 (5th Cir. 1959), rehearing denied, 273 F.2d 958 (1960). The test of proper consolidation is whether the defendants were participants in the same series of acts or transactions whereby they could have been indicted together rather

than separately. King v. United States, 355 F.2d 700 (1st Cir. 1965).

It appears to be the general rule that the consolidation or joint trial of offenses, and defendants, where two or more defendants are separately charged, rests within the discretion of the trial court. See 23 C.J.S. Criminal Law § 931, p. 686; 53 Am.Jur. Trial, Sec. 68, p. 70.

We find the trial court had jurisdiction to consolidate these two cases for trial and that it had not abused its discretion in doing so.

Lastly, the defendant argues that the defendants merely obtained a personal loan of money in return for which they delivered to the lender a promissory note signed by them individually upon a standard note form as evidence of their indebtedness. He contends that such a promissory note is not a security within the definition of the Securities Act and that its issuance as evidence of the loan does not constitute the sale of securities, nor did such a transaction make them dealers or salesmen as defined by the Securities Act. The registration and sale of securities is governed by Chapter 10–04, N.D.C.C., and is known as the Securities Act of 1951. Section 10–04–01, N.D.C.C.

Section 10–04–10, N.D.C.C., pocket supplement, provides in part as follows:

"No dealer or salesman shall offer for sale or sell any securities within or from this state, except in transactions exempt under section 10–04–06, unless he is registered as a dealer or salesman pursuant to the provisions of this section."

The penalty for violation of this section is prescribed by Section 10–04–18, N.D.C.C.

Section 10–04–02, N.D.C.C., contains definitions of various terms used in the Securities Act of 1951. Subsection (2) states:

"2. 'Dealer' shall mean every person, other than a salesman, who engages in this state, either for all or part of his time, * * * Directly * * * in selling securities issued by such person."

Subsection (12) defines a security. It provides:

"12. 'Security' shall mean any note, * * * evidence of indebtedness, * * * or any other instrument commonly known as a security, * * *."

And, subsection (6) states:

"6. 'Person' shall mean an individual, a corporation, a partnership, an association, a joint stock company, a trust, or any other unincorporated organization."

■ Thus the statutes clearly provide that a note is a security and that every person who, for all or part of his time, engages in selling notes issued by such person is a dealer.

■ The defendant argues that State v. Davis (N.D.1964), 131 N.W.2d 730, in which we held that the promissory notes of a corporation were securities required to be registered, under the Securities Act, is not applicable when the notes were issued by an individual. However, it is noted in subsection (6) above, that the Act specifically defines a "person" to mean either an individual or a corporation. Therefore, there is no merit to this argument. A personal promissory note is a "note" and also "evidence of indebtedness" and included in the Securities Act of 1951.

The Federal Courts have construed the word "security" as contained in the Federal Securities Act of 1933, 15 U.S.C.A., Sec. 77b, to include a personal promissory note given in exchange for personal loans. Llanos v. United States (9th Cir. 1953), 206 F.2d 852, cert. denied, 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417; United States v. Monjar (3rd Cir. 1945), 147 F.2d 916, cert. denied, 325 U.S. 859, 65 S.Ct. 1191, 89 L.Ed. 1979; Whitlow & Associates,

Ltd. v. Intermountain Brokers, Inc. (D.C. D. of Hawaii 1966), 252 F.Supp. 943; Olympic Capital Corporation v. Newman (D.C.C.D.Cal.1967), 276 F.Supp. 646; Securities and Exchange Commission v. Addison (D.C.N.D.Texas 1961), 194 F.Supp. 709. The Federal Act defines a security in much the same terms as the North Dakota Act. It provides:

"(1) The term 'security' means any note, * * * evidence of indebtedness, * * * or, in general, any interest or instrument commonly known as a 'security', * * *." 15 U.S.C.A., Sec. 77b.

■ Did the transaction constitute a sale? We think it did. Referring again to Sec. 10–04–02, N.D.C.C., subsection (5) thereof states:

"5. 'Offer for sale' or 'offer to sell' shall mean every attempt or offer to dispose of, or solicitation of an order or offer to buy, a security or interest in a security for value. * * *"

And, subsection (7) states:

"7. 'Sale' or 'sell' shall mean every sale or other disposition of a security or interest in a security for value, and every contract to make any such sale or disposition. * * *"

This issue was also raised in *Llanos.* The Federal Court, in answer thereto, said:

"The gravamen of their argument is that the giving of a promissory note or an evidence of indebtedness in exchange for a personal loan is not a sale. This contention is untenable. Section 2(3) of the Act, defines 'sale' as including ' * * * every * * * disposition of, attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security, for value * * *.' The securities were disposed of for value in the transactions involved, and hence the transactions

are covered by the broad definition of the statute."

What was said in *Llanos* is applicable to our case. The promissory notes in question were disposed of for value, and therefore, the transaction is covered under the broad definition of our statute. We hold that the transaction constituted a sale of a security under the Securities Act of 1951.

Section 10–04–10, quoted above, which provides for the registration of dealers in securities, provides that no dealer shall offer for sale or sell any securities within or from this state " * * * except in transactions exempt under section 10–04–06, * * *" unless he is registered. Section 10–04–06 provides for exempt transactions. It describes many enumerated transactions and exempts the securities sold in such transactions from the registration requirements of the Securities Act. It also exempts the persons involved in such transactions from registering except as expressly provided in the section. The only exemption set forth in the statute which could probably apply to the transaction in question in this case is found in subsection (3), of Sec. 10–04–06, providing for the isolated sale. The statute, insofar as it is material here, is as follows:

"Except as hereinafter in this section expressly provided, sections 10–04–04, 10–04–07, 10–04–08, and 10–04–10 shall not apply to any of the following transactions:

\*      \*      \*      \*      \*      \*

3. Any isolated sale of a security by the issuer or owner thereof or by any agent for the account of such issuer or owner. A sale shall be deemed to be an isolated sale within the meaning of this exemption only if there shall not have been more than two other sales of securities *of the same issue* by such issuer or owner or by an agent for the account of such issuer or owner within this state within the twelve

month period immediately prior to the date of such sale. *This subsection shall not exempt any dealer or his agent participating in an isolated sale from registering as hereinafter provided in section 10–04–10;".* (Emphasis added.) Section 10–04–06(3), N.D.C.C.

Therefore, it might be argued that the sale of several personal promissory notes by the issuer in exchange for personal loans does not constitute a sale of securities "of the same issue". However, we need not pass on that question here. We said above that the issuance of personal promissory notes by an individual constitutes a sale of securities under the Securities Act and therefore we must determine whether the evidence establishes that the defendant was a dealer excepting him from the exemption of the registration requirement contained in Sec. 10–04–10. Subsection (3) of Sec. 10–04–06 states that a "dealer or his agent", participating in an isolated sale, is not exempt from registering as a dealer as required by Sec. 10–04–10. Therefore, if we assume the sale described in the criminal information was an isolated transaction, exempting the security from the requirement that it be registered because it and the other transactions were not sales of securities "of the same issue", the exemption statute does not exempt the seller of the securities from registering as a dealer if he "* * * engages in this state, either for all or part of his time * * *" directly in selling securities which he issues whether "of the same issue" or not.

■ In other words, if we assume each of the transactions in which the defendant was involved constitutes a sale of securities of a different or separate issue and therefore qualifies as isolated transactions exempting the securities from registration, it becomes a matter of importance whether the issuing seller was engaged "for all or part of his time" directly in selling securities qualifying him as a "dealer". This is so because the section does not

exempt a "dealer" from being registered when making an isolated sale. If the person making the sale is a "dealer" as defined by the Act (Sec. 10–04–02(2), N.D.C.C.,) he must be registered as a "dealer" to legally make an isolated sale. If the sale claimed to be isolated is one made in the course of repeated and successive transactions by the same person, it appears the Act will not exempt such person from registering as a "dealer" if, because of his course of conduct, he was engaged in selling securities "for all or part of his time".

■ The defendant has specified the trial court erred when it admitted in evidence proof of other transactions over his objections. However we find the trial court did not err because proof of other transactions is relevant and material to the state's allegation that the defendant was a dealer and not exempt from the requirement that he be registered.

■ The defendant also has specified it was error to instruct the jury that a promissory note, as used in the instructions, means "a promise to pay money reduced to writing" and that it was error for the trial court to refuse to give instructions in accordance with the terms of four requested instructions which were refused. The notes introduced into evidence were regular on their face, having been written upon regular note forms. The gravamen of the argument is that the jury should have been instructed that the notes must be negotiable promissory notes which were issued and then transferred by the payee to another to come within the Securities Act of 1951. We do not agree. The statute specifically provides a "dealer" may be one who engages directly "in selling securities issued by such person". Therefore, the "issuer" and "dealer" may be one and the same person.

The evidence establishes the defendant and his associate were engaged, over a period of two and one-half months, in selling securities and that during this period

they made nine separate sales. We believe this is sufficient evidence from which to find that the sale upon which the defendant was charged was not an isolated transaction exempting the issuer-seller from the requirement that he be registered as a dealer. This was true because the sale was made in the course of repeated and successive transactions in securities over a period of time and therefore he was engaged "for all or part of his time" in selling securities. On the basis of the record in this case we hold that the jury was justified in finding that the defendant was a dealer when he and his associate made the sale alleged in the criminal information. This finding, coupled with the fact that he was not registered as a dealer, was a proper basis for the jury to return the verdict of guilty.

For the reasons stated in this opinion, we find the trial court did not err when it denied the motion for a new trial and that the verdict and the judgment of conviction must be affirmed.

STRUTZ, ERICKSTAD, PAULSON and KNUDSON, JJ., concur.