**STATE of North Dakota, Plaintiff and Respondent,**

v.

**Pius T. WEIGEL, Defendant and Appellant.**

**Cr. 377.**

Supreme Court of North Dakota.

Feb. 25, 1969.

Maurice G. LaGrave, Mandan, for appellant.

Helgi Johanneson, Atty. Gen., and Donald R. Holloway, Sp. Asst. Atty. Gen., Bismarck, and Lester J. Schirado, State's Atty. for Morton County, Mandan, for respondent.

ERICKSTAD, Judge (on reassignment).

By information dated February 24, 1967, the defendant, Pius T. Weigel, was charged in the District Court of Morton County with having sold a security while not registered as a securities dealer or salesman.

Through a similar information Carl Weisser was charged with the same offense, and the two informations were consolidated for trial. The trial resulted in verdicts of guilty, and it is from the judgment and sentence entered upon the verdict finding Mr. Weigel guilty that he now appeals.

The facts essential to our consideration of Mr. Weigel's contention on this appeal were summarized by Chief Justice Teigen in the decision which considered Mr. Weisser's contentions on his earlier appeal as follows:

The two defendants, Weisser and Weigel, together approached one Henry Entzel and stated that they wished to borrow $25,000.00, which would be repaid in 60 days. Mr. Entzel did not agree to loan them this amount of money but did loan them $2,500.00 to be repaid in 60 days. The defendants in return gave Mr. Entzel a promissory note dated May 21, 1966, written on a standard note form furnished by the defendants in the amount of $3,000.00, payable in 60 days and bearing interest at 7 per cent per annum. The blank spaces on the form were filled in by the defendant Weisser and each defendant signed the note as a maker. The transaction was completed in the presence of Mr. Entzel. The defendants paid the sum of $400.00 to apply on this note but no additional payments have been made. It is upon this transaction the defendants were charged.

It also appears from the record that on March 7, 1966, the defendants had borrowed $1,500.00 from Mr. Entzel at which time they gave him a promissory note in the amount of $1,800.00, which was paid about 40 days after the loan was made. The record also discloses several other similar transactions with other lenders, all participated in by the two defendants jointly * * *.

In each of these transactions the defendants gave to the person from whom the money was secured a promissory note for a sum substantially greater than the amount loaned. All of the notes were made payable in 90 days, more or less, from the date of the transaction. Each note was written by the defendant Weisser in the presence of the lender and then signed by each of the defendants (Weisser and Weigel) and delivered to the lender. It is also clear from the record that the defendants, in negotiating for the loans, told the lenders that they had an opportunity to purchase corporate stock from a widow which they could sell at a substantially higher price to another person, but that the widow would not part with the stock until she was paid for it and the purchaser would

not pay them the purchase price until they delivered the stock. Therefore, they told the lenders they needed sums of money ranging all the way from $10,000.-00 to $25,000.00 for the purpose of acquiring the stock from the widow and delivering it to the purchaser; that they would realize a substantial profit on the transaction and, therefore, as soon as the transaction was completed, they could repay the loans plus the bonus added as a part of the principal set forth in the promissory note. Thus it appears that during a period of two and one-half months, from March 6, 1966, to May 21, 1966, the defendants issued nine promissory notes for varying amounts in return for money received.

Both defendants were present and participated in each of these transactions.

State v. Weisser, 161 N.W.2d 360, 362–363 (N.D.1968).

The issue in *Weisser* relating to the issue in this case was stated by the Chief Justice as follows:

The gravamen of the argument is that the jury should have been instructed that the notes must be negotiable promissory notes which were issued and then transferred by the payee to another to come within the Securities Act of 1951. * *

State v. Weisser, *supra,* 367.

In this connection the court said:

We do not agree. The statute specifically provides a "dealer" may be one who engages directly "in selling securities issued by such person". Therefore, the "issuer" and "dealer" may be one and the same person.

State v. Weisser, *supra,* 367.

Counsel for Mr. Weigel asserts that the theory upon which the Weigel defense was made is that, although the note on its face was negotiable, it was in fact, as brought out on cross-examination, not a negotiable note, and that therefore the note did not come within the provisions of the Securities Act. It is his position that a note, to come within the Securities Act, must be a negotiable note, and for this he relies on the definition contained in § 41–01–02 as it read at the time of the alleged offense:

5. "Bill" means bill of exchange, and "note" means negotiable promissory note; * * *.

North Dakota Century Code.

Chapter 10–04 of the Code contains our statutory provisions on securities, and § 10–04–02(12) defines *security* as follows:

"Security" shall mean any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation, certificate of interest in oil, gas, or other mineral rights, collateral trust certificates, pre-organization certificate or subscription, transferable share, investment contract, voting trust certificate, or beneficial interest in title to property, profits or earnings, or any other instrument commonly known as a security, including any guarantee of, temporary or interim certificate of interest or participation in, or warrant or right to subscribe to, convert into or purchase, any of the foregoing.

North Dakota Century Code.

Had the legislature intended that only a negotiable note should constitute a security, it could very easily have so indicated in subsection 12. As it merely used the term *note,* we cannot assume that it intended to restrict the coverage of the Act to *negotiable notes.*

██ We point out further that the definition of a note contained in § 41–01–02 is by that very section restricted to title 41, which relates only to negotiable instruments.

██ In construing legislation generally it is our duty to attempt to determine legis-

lative intent, and when that intent is directed toward an objective not prohibited by the state or federal constitutions, our construction of the legislation should be in aid of and compatible with this intent.

Our statutes imposing criminal penalties are to be given similar breadth.

29-01-29. Rule of construction of title. —The rule of the common law that penal statutes are to be strictly construed has no application to this title. This title establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be liberally construed with a view to promoting its objects and in furtherance of justice.

North Dakota Century Code.

In Syllabus 4 of Timm v. State we said:

Penal statutes are to be given a liberal interpretation with a view of promoting the object of the statutes and in furtherance of justice. (citation omitted)

Timm v. State, 110 N.W.2d 359, 360 (N. D.1961).

One of the basic objectives of the Securities Act is the avoidance of fraud or deception in the sale of securities. That this is so may be noted by consideration of the first sentence of § 10–04–08.1, a part of which reads:

The right to sell securities in this state shall not be granted in any case where it appears to the commissioner that the sale of such securities would work a fraud or deception on purchasers or the public * * *.

North Dakota Century Code.

Our construction of the Securities Act is in line with that objective. Accordingly, we find no error in the trial court's refusal to give the instructions which had as their core the basic idea that a note, to come within the Securities Act, must be a negotiable note.

The judgment and sentence of the trial court are therefore affirmed.

TEIGEN, C. J., and STRUTZ, KNUDSON and PAULSON, JJ., concur.