**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Gaylord GATES, Defendant and Appellant.**

**Cr. No. 825.**

Supreme Court of North Dakota.

Oct. 20, 1982.

Robert G. Hoy, States Atty., Fargo and Joan B. Weiner, Asst. Atty. Gen., Bismarck, for plaintiff and appellee; argued by Joan B. Weiner.

Edward J. Murphy, Fargo, for defendant and appellant.

PEDERSON, Justice.

Gaylord Gates was convicted by a Cass County District Court jury of three counts of securities law violation: (1) offering for sale or selling securities when not registered as a dealer or salesman (§ 10–04–10, NDCC); (2) offering for sale or selling unregistered securities (§ 10–04–04, NDCC); and (3) fraudulently offering or selling securities (§ 10–04–15, NDCC). Gates appealed, arguing (1) that the court erred in an instruction to the jury defining "evidence of indebtedness", and (2) that the agreements he made with various people did not constitute "dealing in securities."

The evidence showed that Gates used a variety of approaches in offering to find sources of financing for borrowers, but primarily in exchange for an "advance fee," he obtained "loan commitments" for them. In some transactions loans were made but, in others, which were the subjects of this prosecution, there was no loan and no return of the "advance fees." Gates told his customers that the "loan commitment" documents were "bankable." No bank, however, would honor them—they were worthless.

It is not disputed—neither Gates nor the "loan commitments" were registered under the North Dakota Securities Act. The trial was long and complex—more than 12 volumes of transcript of testimony and motions hearings. The Securities Act is not

easy to read and understand. The instructions to the jury in this case are complicated. And the pattern of negotiations and agreements between Gates and his customers was confusing. Nonetheless, Gates makes a simple argument to this court that the definition of "evidence of indebtedness" in the instructions was wrong and that he only sold a service and did not deal in securities.

Under Rule 30(c), NDRCrimP, when counsel is afforded the opportunity to examine instructions before they are given to the jury, objections or exceptions must be thereupon taken and counsel given a reasonable time to do so. Objections not raised at that time are waived. *State v. Granrud,* 301 N.W.2d 398, 401 (N.D.1981).

The portion of the instruction disputed reads as follows:

"The State alleges that defendant offered or sold a type of security called an evidence of indebtedness. If you find that he offered or sold a loan commitment to a prospective borrower, which commitment consisted of an offer to obtain long-term mortgage financing in exchange for the borrower's payment of an advance fee, then you may find that defendant offered or sold an evidence of indebtedness, and therefore, that he offered or sold a security."

The transcript, volume XI at 1384, records the extent of the objection made by defendant's counsel:

"THE COURT: Page 36. Definition of Evidence of Indebtedness, plaintiff's requested No. 6 given by the Court. Is there any objection to that from the State?

"MS. WEINER: No, there isn't.

"THE COURT: Any objection from the defendant?

"MR. KIRSCHNER: Defendant would object that it is an unnecessary instruction; that it's covered by Definition of a Security.

"THE COURT: The Court finds it clarifies for the jury and as such the Court will give it. And your objection is noted."

It is elementary that in determining whether or not the trial court, in its instructions, correctly advised the jury on the law of the case, this court must consider the instruction as a whole. See *State v. Reich,* 298 N.W.2d 468, 471 (N.D.1980), and cases cited therein. Accordingly, an objection which notes that a part of the instruction is unnecessary because the subject matter is covered elsewhere in the instruction is not an objection that the jury was incorrectly advised on the law of the case. Objection to the instructions was, in effect, waived and we must accept the instruction given as the law of the case.

In order to evaluate the argument by Gates that the agreements he made with various people did not constitute "dealing in securities," it is necessary that we start with an examination of the pertinent parts of the North Dakota Securities Act. Prior to its amendment by Ch. 132, S.L. 1981, the definition of "security" for the purposes of the North Dakota Securities Act stated:

"10–04–02. Definitions.—When used in this chapter, unless the context or subject matter otherwise requires:

.        .        .        .        .

"12. 'Security' shall mean any note, stock, treasury stock, bond, debenture, *evidence of indebtedness,* certificate of interest or participation, certificate of interest in oil, gas, or other mineral rights, collateral trust certificate, preorganization certificate or subscription, transferable share, investment contract, program, contract, or other arrangement in which persons invest in a common enterprise the returns of which depend to any extent upon inducing other persons to participate or invest in the enterprise, voting-trust certificate, or beneficial interest in title to property, profits or earnings, or any other instrument commonly known as a security, including any guarantee of, temporary or interim certificate of interest or participation in, or warrant or right to subscribe to, convert into, or purchase, any of the foregoing." [Emphasis supplied.]

Although drawing a sentence diagram of that super-sentence might be more than most people would care to undertake, it is possible that it could be done. See *State v. Unterseher,* 289 N.W.2d 201, 202 (N.D.1980), for example. Identifying the base clause and the modifiers and subordinate clauses was, to some extent, involved in our interpretation of § 10–04–02(12) in *State v. Goetz,* 312 N.W.2d 1 (N.D.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1286, 71 L.Ed.2d 467 (1982). It appears that, for this case, we need not reach any of the modifier or subordinate clauses. "When used in this Chapter [Ch. 10–04, NDCC], unless the context or subject matter otherwise requires ... 'Security' shall mean any ... evidence of indebtedness."

As in many areas of law, labels are not ordinarily conclusive. A document need not be labeled "Evidence of Indebtedness" to be classified as a security nor would that label conclusively establish that the document is a security.

This court has not had many occasions to interpret the definition of security in § 10–04–02(12). Recently, in *State v. Goetz, supra,* we said that a promissory note is a security. See also *State v. Weigel,* 165 N.W.2d 695 (N.D.1969), and *State v. Weisser,* 161 N.W.2d 360 (N.D.1968). In *State v. Davis,* 131 N.W.2d 730, 732 (N.D.1964), we said that the "legislature intended to include all transactions which were the legitimate subject of its regulation and this section should not be construed narrowly."

It is apparent that obvious and commonplace documents, such as notes, stocks, or bonds, are included in the definition of "security." Section 10–04–02(12), NDCC. The definition is much broader than that. As the United States Supreme Court said: "Novel, uncommon, or irregular devices, ... [are securities] if it be proved ... that they were widely offered or dealt in under terms or courses of dealing which established their character in commerce as 'investment contracts,' or as 'any interest or instrument commonly known as a "security." ' " *S.E.C. v. Joiner Corp.,* 320 U.S. 344, 351, 64 S.Ct. 120, 88 L.Ed. 88 (1943). The documents found to be "securities" in *Joiner Corp.* were assignments of oil and gas leases.

■ It is apparent that the labeling of the document is not significant, nor, in the hands of a "gifted" salesman, is it of great significance what the words on the document state. Explicit disclaimers in the document do not deter a crafty salesman from weaving into the transaction, in both an economic and a legal sense, a scheme that will provide "the thread on which everybody's beads were strung." *Joiner Corp.,* 320 U.S. at 348, 64 S.Ct. at 122. The proof, in such cases, "must go outside the instrument itself." *Joiner Corp.,* 320 U.S. at 355, 64 S.Ct. at 125.

■ At least one federal court has construed the word "security," as used in the Federal Securities Act of 1933, 15 U.S.C.A. § 77b, to include loan commitments. *United States v. Austin,* 462 F.2d 724, 736 (10th Cir. 1972), *cert. denied,* 409 U.S. 1048, 93 S.Ct. 518, 34 L.Ed.2d 501 (1972). That court found:

"It is true that the letter of commitment is not an indicium of debt in the same sense as is a promissory note, but as used in the Securities Act no such restriction is appropriate. In last analysis, this letter of commitment was sold for a substantial consideration, and the buyer received what appeared to be an enforceable obligation which contemplated the flow of funds. It indicated a binding and legally enforceable right. Therefore, we can find no fault with the ruling of the trial court insofar as it regarded the letter of commitment as plainly being a security."

Gates' argument that the evidence shows that he sold his services to find lenders only and that no securities were involved is, in effect, a claim that the evidence is not sufficient to support the verdict. We have often said that it is not our role to substitute our judgment for that of the trier of facts. In *State v. Olson,* 290 N.W.2d 664, 671 (N.D.1980), we said:

"[T]he role of the Supreme Court is to merely review the record to determine if there is competent evidence that allowed the jury to draw an inference reasonably tending to prove guilt and fairly warranting a conviction."

There was competent evidence received which would support the drawing of an inference, by this jury, that the "loan commitments" were "evidence of indebtedness" and, thus, securities. There was no error of law and there is ample evidence in the record to support the verdict. The judgment of conviction is affirmed.

ERICKSTAD, C.J., and VANDE WALLE, SAND and PAULSON, JJ., concur.