STATE of North Dakota for the Use and Benefit of FIRST AMERICAN BANK AND TRUST COMPANY, Plaintiff and Respondent,

v.

GENERAL INSURANCE COMPANY OF AMERICA, Defendant and Appellant.

Civ. No. 8613.

Supreme Court of North Dakota.

Aug, 27, 1970.

Pearce, Engebretson, Anderson, Schmidt & Thames, Bismarck, for defendant and appellant.

Conmy, Conmy, Rosenberg & Lucas, Bismarck, for plaintiff and respondent.

ERICKSTAD, Judge.

General Insurance Company of America, as defendant, appeals to this court from a judgment entered in this action on the second day of August, 1969, in favor of the plaintiff, the State of North Dakota for the use and benefit of First American Bank

and Trust Company, in the sum of $10,024.-50. The General Insurance Company of America will hereinafter be referred to as the bonding company, and the First American Bank and Trust Company will be referred to as the bank.

For purposes of this appeal the parties have stipulated to the facts. The pertinent part of the stipulation reads:

## I

That Courtesy Motors, Inc., a North Dakota corporation, was doing business as a duly licensed new and used automobile dealer during the year 1966, with its offices located between Bismarck and Mandan, North Dakota.

## II

That Courtesy Motors, Inc. had procured, as required by statute, a $10,000 motor vehicle bond from the defendant, General Insurance Company of America, as is provided under Section 39–22–05 of the North Dakota Century Code.

## III

That First American Bank and Trust Company of Bismarck, North Dakota, loaned money to Courtesy Motors, Inc. for the purchase of new automobiles, taking back a security agreement against said new automobiles.

## IV

In addition to the advances mentioned in paragraph III above, Courtesy Motors, Inc. executed and delivered a security agreement to First American Bank and Trust Company, covering all of its inventory, including all new and used automobiles in its possession.

## V

That the said First American Bank and Trust Company permitted the dealer, Courtesy Motors, Inc. to retain possession of the automobiles for sale to the public, subject to First American Bank and Trust Company's security agreement with the said First American Bank and Trust Company holding all certificates of title and certificates of origin to the said automobiles; and upon the sale of each automobile covered under the security agreement being consummated, Courtesy Motors, Inc. was to pay to First American Bank and Trust Company a certain percentage of the sales price in exchange for the titles and certificates of origin of the automobiles covered under the agreement and sold.

## VI

That Courtesy Motors, Inc. sold automobiles to the public covered by the said security agreement out of trust and, thereby the said Courtesy Motors, Inc. was unable to deliver to the purchaser the certificate of title or certificate of origin so said purchaser could cause the transfer of title to his name. * * *

## VII

That Courtesy Motors, Inc. filed bankruptcy on December 16, 1966, and that subsequent to that time, by an order dated March 10, 1967, the Bankruptcy Court ordered said First American Bank and Trust Company to turn over all titles that it had to the purchasers of automobiles sold out of trust by Courtesy Motors, Inc. See Exhibit B as to the order referred to above and Exhibit A as to the names of the purchasers.

## VIII

That there are no claims under the terms of the bond referred to in fact allegation II made by the people listed in Exhibit A or by anyone else other than First American Bank and Trust Company.

### IX

Further, that First American Bank and Trust Company had brought a similar action to this proceeding in its own name in which the Court rendered an opinion, a copy of which is attached hereto as Exhibit C.

The pertinent part of the order referred to as Exhibit B in the stipulation of facts reads as follows:

It is hereby ORDERED that the certificates of origin to automobiles purchased from Courtesy Motors be released by the court to the purported purchasers thereof, reserving to the First American Bank & Trust Co., the right to seek to establish ownership or lien security against such automobiles in an appropriate court by separate action or actions naming directly the parties interested therein.

In the opinion referred to as Exhibit C in the stipulation of facts the trial court said:

If there is a claim by this plaintiff against the bond, it would have to be litigated through a marshalling of the assets by the motor vehicle registrar for the benefit of any and all claimants. Obviously the motion must be granted as there is no genuine issue as to a material fact between plaintiff and defendant General Insurance Company of America and the action is dismissed as to this defendant.

The latter reference relates to the trial court's disposition of the first action, wherein the bank initiated an action on the bond on its own behalf.

From the trial court's memorandum opinion of May 27, 1969, we learn the court's reasoning behind its order for judgment, upon which order the judgment appealed from is based. It is the trial court's view that the persons who were unable to secure certificates of title (the purchasers of the new automobiles) because of their inability to secure certificates of origin are within the class of persons protected under the bond and Chapter 39–22, N.D.C.C., and that accordingly when, upon the order of the bankruptcy court, the bank involuntarily surrendered the certificates of origin to the purchasers it became subrogated to the rights of the purchasers.

The bonding company in this appeal asserts first that the bank is not a proper claimant under Section 39–22–05, N.D.C.C., and second that it cannot prevail as a party subrogated to the rights of the purchasers.

The pertinent statute is Section 39–22–05, N.D.C.C.:

*Bond required.*—Before the issuance of a motor vehicle dealer's license, as provided by law, the applicant for such a license shall furnish a surety bond executed by the applicant as principal and executed by a surety company, licensed and qualified to do business within the state of North Dakota, which bond shall run to the state of North Dakota, be in the amount of ten thousand dollars and be conditioned upon the faithful compliance by said applicant as a dealer, if the license be issued to it or him, that such dealer will comply with all of the statutes of the state of North Dakota, including this chapter, regulating or being applicable to the business of said dealer as a dealer in motor vehicles, and indemnifying any person dealing or transacting business with said dealer in connection with any motor vehicle from any loss or damage occasioned by the failure of such dealer to comply with any of the provisions of title 39, including, but not limited to, the furnishing of a proper and valid certificate of title to the motor vehicle involved in any such transaction, and that such bond shall be filed with the registrar of motor vehicles prior to the issuance of license provided by law. The aggregate liability of the surety of all persons, however, shall in no event exceed the amount of said bond. Any third party sustaining injury within the terms of the bond may proceed against

the principal and surety without making the state a party to any such proceedings.

It is the bonding company's contention that the bond in light of that statute is intended solely for the protection of purchasers of motor vehicles and is not intended for the protection of financial institutions floor-planning automobile dealers' inventories.

In support of this view it cites the following:

* * * a statutory bond to the public given for the observance of a law is to be read, construed, and enforced in connection with, and according to, the statute pursuant to which it is given, and to be interpreted according to the purpose and meaning of the legislative enactment. 12 Am.Jur.2d, Bonds § 2 at p. 479 (1964).

Bonds required by statute * * * are to be strictly construed, and are not to be extended by implication beyond the clearly expressed intent of the statute. 11 C.J.S. Bonds § 39 at p. 418 (1938).

It is to be noted, however, that in citing from American Jurisprudence 2d the bonding company omitted the crucial preliminary statement to its quotation. The full quotation from that source reads:

While a bond is ordinarily purely a contract which, when privately given without any qualifying laws, is to be strictly construed and not extended beyond the scope of the obligation according to its express terms, a statutory bond to the public given for the observance of a law is to be read, construed, and enforced in connection with, and according to, the statute pursuant to which it is given, and to be interpreted according to the purpose and meaning of the legislative enactment. 12 Am.Jur.2d Bonds § 2 at p. 479 (1964).

This would indicate that a statutory bond is to be more liberally construed than a bond privately given without any qualifying laws.

▆ In any case, since our rule of statutory construction requires that our statutes be liberally construed with a view to effecting their objectives, and, as the bond in this case is a statutory bond, the bond, as well as the statute, must be liberally construed with a view to effecting its objectives.

1–02–01. Rule of construction of code. —The rule of the common law that statutes in derogation thereof are to be construed strictly has no application to this code. The code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be construed liberally, with a view to effecting its objects and to promoting justice. North Dakota Century Code.

▆ Accordingly, we do not construe the bond or Section 39–22–05, N.D.C.C., as narrowly as the bonding company would have them construed, or as narrowly as it is contended the trial court construed such bond and statute. It is our view that although the statute contemplates that purchasers are the ones to be primarily protected by the statute and the bond, they are not the only ones that may benefit from the statute and the bond called for by the statute.

In the instant case it is contended that because the purchasers of the automobiles were buyers in the ordinary course of business under Section 41–09–28, Subsection 1, of the North Dakota Century Code, which is equivalent to Section 9–307, Subsection 1, of the Uniform Commercial Code, the purchasers of the automobiles acquired title to the automobiles free of the bank's security interest and that, accordingly, the bank had no right to retain the certificates of origin.

In support of this position the bonding company refers us to the following quotation from Uniform Laws Annotated, Mas-

ter Edition, Volume 3, West, Section 9–307, at page 185, which reads:

\* \* \* The buyer in ordinary course of business is defined as one who buys "in good faith and without knowledge that the sale to him is in violation of the ownership rights or security interest of a third party." This Section provides that such a buyer takes free of a security interest, even though perfected, and although he knows the security interest exists. Reading the two provisions together, it results that the buyer takes free if he merely knows that there is a security interest which covers the goods but takes subject if he knows, in addition, that the sale is in violation of some term in the security agreement not waived by the words or conduct of the secured party.

The limitations which this Section imposes on the persons who may take free of a security interest apply of course only to unauthorized sales by the debtor. If the secured party has authorized the sale in the security agreement or otherwise, the buyer takes free without regard to the limitations of this Section.

In this case there is no contention that the purchasers did not act in good faith and it is apparently conceded by the bank that the purchasers, on proper demand, were entitled to a surrender of the certificates of origin. The effect of that section of the Uniform Commercial Code upon this case, however, is in dispute.

In light of the fact that there would appear to be little need for a bond if Section 39–22–05, N.D.C.C., the statute providing for the bond, were to be as narrowly construed as the bonding company would have it construed, and further in light of the fact that the Legislature could have very easily specifically restricted the benefit of the bond to purchasers had they so intended, it is our conclusion that Section 39–22–05, N.D.C.C., protects the bank in this case, notwithstanding the provisions of Section 41–09–28, Subsection 1, N.D.C.C. This

holding is consistent with the liberal construction placed upon another type of statutory bond by the court recently. See Giese v. Engelhardt, 175 N.W.2d 578 (N.D.1970).

Accordingly, the judgment is affirmed.

PAULSON, STRUTZ and KNUDSON, JJ., concur.

TEIGEN, C. J., concurs in the result.