**Donald T. HUGHES, Plaintiff-Appellant and Cross-Appellee,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Maurine Hughes, Defendants-Appellees and Cross-Appellants.**

Civ. No. 9141.

Supreme Court of North Dakota.

Dec. 17, 1975.

Rehearing Denied Jan. 16, 1976.

Pearson & Christensen, Grand Forks, for plaintiff-appellant and cross-appellee; argued by Garry A. Pearson, Grand Forks.

Vogel, Vogel, Brantner & Kelly, Fargo, for defendants-appellees and cross-appellants; argued by Mart R. Vogel, Fargo.

PAULSON, Judge.

This is an appeal by the plaintiff, Donald T. Hughes [hereinafter Donald], and a cross-appeal by the defendant State Farm Mutual Automobile Insurance Company [hereinafter State Farm], from a judgment of the Cass County District Court declaring that State Farm was not liable under the terms of an insurance policy for liability incurred by Donald for injuries sustained by his wife, Maurine Hughes [hereinafter Maurine], in a snowmobile accident, but declaring that State Farm was liable for the sum of $10,000 for failure to provide uninsured motorist coverage as required by § 26–02–42, N.D.C.C., for such injuries.

The facts in this declaratory judgment action are not in dispute, and have been stipulated. They are, in pertinent part:

"I.

"At all times material to the resolution of this dispute, the defendant Maurine Hughes was married to the plaintiff Donald T. Hughes and was a resident in the same household as Donald T. Hughes at 215 Lincoln Drive, Grand Forks, North Dakota.

"II.

"On or about January 15, 1971, Mr. and Mrs. Hughes applied for a policy of recreational vehicle insurance with the State Farm Mutual Automobile Insurance Company for a 1971 Arctic Cat snowmobile. A copy of their application, signed by Maurine H. Hughes, is attached hereto and marked Exhibit 'A'.

"III.

"Pursuant to the application, the defendant State Farm Mutual Automobile Insurance Company issued its recreational vehicle policy effective January 15, 1971. A true and correct copy of that policy is attached hereto marked Exhibit 'B'. This policy was renewed from time to time and was in full force and effect during all of the times material to this action.

"IV.

"On January 21, 1973, at about 3:00 o'clock P.M., Donald T. Hughes was operating the snowmobile referred to and described in Exhibits 'A' and 'B' on the Red River of the North within the city limits of the City of Grand Forks, North Dakota, at a point between the Sorlie Bridge and the Point Bridge. At that time the defendant Maurine Hughes was a passenger on the snowmobile operated by her husband. A collision occurred between such snowmobile and another snowmobile owned by one Vernon C. Sanders and in that collision the defendant Maurine Hughes sustained personal injuries.

"V.

"On January 30, 1974, Maurine Hughes brought suit against Donald T. Hughes and Vernon Sanders in the District Court of Grand Forks County, North Dakota, First Judicial District. The defendant State Farm Mutual Automobile Insurance Company had actual notice of the pendency of that action but refused to defend. A true and correct copy of a letter sent by this defendant to the plaintiff concerning its refusal is hereto attached and marked Exhibit 'C'. Likewise attached hereto as Exhibit 'D' is the complaint in the action and Exhibit 'E', the findings of fact, conclusions of law, order for judgment and judgment in the case.

"VI.

"While the parties do not wish to unduly restrict themselves, the following statement of each party's position is giv-

en but intended to be merely explanatory:

"A. Plaintiff's position is:

"1. That the insurance policy between Donald T. Hughes and the defendant State Farm Mutual Automobile Insurance Company provides coverage for the injuries sustained by Maurine Hughes; that the exclusion relied upon by the defendant, State Farm Mutual Automobile Insurance Company, i. e., commonly known as the 'family exclusion clause' is void as being contrary to the statutes and public policy of the State of North Dakota.

"2. In the alternative Donald T. Hughes contends that if plaintiff is not successful under contention 1 above, that he is entitled to protection under the policy in any event as the policy fails to provide uninsured motorist coverage as required by section 26–02–42, North Dakota Century Code.

"B. The defendant State Farm Mutual Automobile Insurance Company's position is:

"1. The policy provisions found under 'Exclusions, Section I(H)' known as a family exclusion clause prohibit insurance coverage in any action or claim by Maurine Hughes since she is a named insured, is a member of the family of Donald T. Hughes and resides in the same household as Donald T. Hughes.

"2. The defendant further denies that Donald T. Hughes is entitled to protection for uninsured motorist coverage on the grounds that a snowmobile is not a motor vehicle within the meaning of the North Dakota Uninsured Motorist statute. . . ."

[The Exhibits, "A", "B", "C", "D", and "E" referred to in the stipulation are included in the record.]

We are therefore presented with two issues on this appeal:

1. Is the so-called "household, or family, exclusion clause" contained in the policy of liability insurance issued by State Farm valid and enforceable under the statutes and public policy of our State?

2. Must an insurance company, which issues a liability policy for a snowmobile, provide uninsured motorist coverage as part of that policy, as such coverage is defined by § 26–02–42, N.D.C.C.?

The first question which we must resolve in determining the proper disposition of the two issues is whether or not a snowmobile is, in fact, a "motor vehicle" as that term is used in Title 39, N.D.C.C., and in § 26–02–42, N.D.C.C. A "motor vehicle" is defined in § 39–01–01(32), N.D.C.C., as:

". . . every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails;"

The term "vehicle" is defined in § 39–01–01(72), N.D.C.C., as:

". . . every device in, upon, or by which any person or property may be transported or drawn upon a public highway, except devices moved by human power or used exclusively upon stationary rails or tracks."

Such definitions are identical to the definitions in the Uniform Vehicle Code, § 1–134 ("motor vehicle") and § 1–184 ("vehicle"), from which much of Title 39, N.D.C.C., is derived.

In § 39–24–01(2), N.D.C.C., a "snowmobile" is defined, for purposes of Chapter 39–24, as:

". . . a self-propelled vehicle designed for travel on snow, ice, or a natural terrain and steered by wheels, skis, or runners."

Such definition, for the purposes of Chapter 39–24, N.D.C.C., does not, however, preclude a conclusion that a snowmobile is a motor vehicle under Title 39, N.D.C.C.

On October 1, 1969, the Attorney General of North Dakota, in an official

opinion, stated that a snowmobile was indeed a "motor vehicle" under North Dakota law, and he therefore concluded that a portion of each snowmobile registration fee was to be set aside for contribution to the state's Unsatisfied Judgment Fund, which is used as one possible source of compensation for accident victims when the vehicle's operator does not carry liability insurance.[1] July 1, 1970, Att'y Gen.Rep., pp. 236–240. In his official opinion the Attorney General stated:

> "By its own definition, a snowmobile is '* * * a self-propelled vehicle'. Since every vehicle which is self-propelled has been defined as a motor vehicle, it follows that a snowmobile would also be included within the broader term 'motor vehicle'." [A.G.Rep., *supra* at 236.]

While not binding upon the courts, an Attorney General's official opinion nonetheless has important bearing on the construction and interpretation of a statute. 2A Sutherland Statutory Construction § 49.05, p. 240. *Walker v. Weilenman*, 143 N.W.2d 689, 691, Syll. ¶ 1 (N.D.1966). Such official opinion of the Attorney General is especially persuasive when subsequent legislative action appears to confirm the opinion.

One of the principal reasons for the enactment of Chapter 39–24, N.D.C.C. [S.L. 1971, ch. 385] by the Forty-second Legislative Assembly, which provided for the titling and registration of snowmobiles, was to insure that sufficient funds were collected from snowmobile registrants for payment into the Unsatisfied Judgment Fund, as required by the Attorney General's opinion quoted above. We think such legislative action confirms the Attorney General's opinion. *See* Committee Minutes (House Transportation Committee), February 11, 1971; Committee Minutes (Senate Trans-

portation Committee), March 4, 1971, of the 42nd Legislative Assembly.

State Farm, however, refers us to a recent decision of the Supreme Court of Minnesota, *i. e. Stepec v. Farmers Insurance Company*, 222 N.W.2d 796 (Minn.1974), which concluded that a snowmobile was not a motor vehicle within the definition of that term under Minnesota statutes.[2] We note, however, that the statutory definition of "motor vehicle" at issue in the *Stepec* case is far narrower and less inclusive than is the definition in § 39–01–01(32), N.D.C.C. and such definition in the Uniform Vehicle Code, in § 1–134 thereof.

While there are few reported cases on this issue, it has been held under an Ohio statute defining a "motor vehicle" as "every device in, upon or by which any person or property may be transported or drawn upon a highway", that a snowmobile is a motor vehicle, whether or not driven on the highway at the time that the alleged violation occurred. *State v. Carkhuff*, 26 Ohio Misc. 216, 270 N.E.2d 379, 380 (Mun.Ct. 1971).

■ In the instant case, we agree with the North Dakota Attorney General's analysis, contained in his October 1, 1969, opinion, and conclude that, for the purposes hereinbefore set forth, a snowmobile is a "motor vehicle".

Having determined that a snowmobile is a motor vehicle as that term is used in Title 39, N.D.C.C., we now turn to a consideration of Donald's primary contention on this appeal, *i. e.*, that the household or family exclusion clause contained in the policy of liability insurance is void in North Dakota.

■ In the instant case, Donald and Maurine Hughes applied for and purchased, in 1971, a "Recreational Vehicle Policy" from State Farm, which policy promised to indemnify, within established "Limits of Li-

---

1. §§ 39–17–03, 39–17–04, N.D.C.C.

2. " 'Motor Vehicle' means every self-propelled vehicle which is designed for use upon a highway, including trailers and semi-trailers designed for use with such vehicles, except traction engines, road rollers, farm tractors, tractor cranes, power shovels, and well drillers." 12A Minn.Stat.Ann. 170.21, Subd. 5, p. 406.

ability", either of them as the named insured for liability incurred due to the ownership or operation of certain snowmobiles and associated equipment. However, the policy also contained what is commonly referred to as a "household, or family, exclusion clause", which reads, in pertinent part:

"EXCLUSIONS—SECTION 1

"THIS INSURANCE DOES NOT APPLY UNDER:

. . . . .

"(h) COVERAGE A, TO BODILY INJURY TO ANY INSURED OR ANY MEMBER OF THE FAMILY OF AN INSURED RESIDING IN THE SAME HOUSEHOLD AS THE INSURED;"

Generally, such a clause, if valid, operates to relieve an insurance company of liability under the terms of the policy of insurance where the named insured or any family or household member is injured in an accident caused by the negligent operation of a motor vehicle by the insured or a member of his family or household. *See Nodak Mutual Insurance Company v. Wacker*, 154 N.W.2d 776 (N.D.1967); *State Farm Mut. Auto. Ins. Co. v. Northwest Leasing Corp.*, 295 F.Supp. 516 (D.N.D.1969); *Tomlyanovich v. Tomlyanovich*, 239 Minn. 250, 58 N.W.2d 855 (1953). We do not, however, deem either *Wacker, Northwest Leasing*, or *Tomlyanovich* controlling. These decisions dealt only with the construction or interpretation of a household, or family, exclusion clause. In none of these cases was the court presented with the question of the clause's validity. Such issue is one of first impression in this State.

The policy as issued by State Farm also contains what is commonly referred to as a "Conformity Clause", which clause warrants to the policyholder that, under certain conditions, the policy is in compliance with and conforms to, the requirements of a state's financial responsibility law. In the policy applicable to Donald in the instant case, such provision states:

"FINANCIAL RESPONSIBILITY LAWS

"When certified as proof of future financial responsibility under any motor vehicle financial responsibility law and while such proof is required during the policy period, this policy shall comply with such law if applicable, to the extent of the coverage and limits required thereby; but not in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."

Chapters 39–16 and 39–16.1, N.D.C.C., are the "Financial Responsibility Laws" in effect in North Dakota. At the time of the accident on January 21, 1973, § 39–16–05, N.D.C.C., provided as follows:

"*39–16–05. Suspension of license and when not applicable.*—The commissioner, within sixty days after the receipt of a report of a motor vehicle accident within this state which has resulted in bodily injury or death, or damage to the property of any one person in excess of one hundred dollars, shall suspend the license of each driver of each vehicle in any manner involved in such accident, and if such driver is a nonresident, the commissioner shall suspend the driver's privilege of operating a motor vehicle within this state unless such driver shall deposit security as provided in sections 39–16–09 and 39–16–10 in a sum which shall be sufficient in the judgment of the commissioner to satisfy any judgment or judgments for damages resulting from such accident as may be recovered against such driver; provided notice of such suspension shall be sent by the commissioner to such driver not less than ten days prior to the effective date of such suspension and shall state the amount required as security. However, if a driver either resident or nonresident involved in such accident purchases a policy of insurance with at least the amount of coverage required

by this section and files proof, and satisfies financial responsibility requirements thereof with the commissioner, that driver shall be allowed to retain his license or privilege until such time as the driver has accepted responsibility for the accident or agreed to a settlement of claims arising from the accident or until a court of this state has determined that the driver was negligent or responsible for the accident in whole or in part. If the driver is found negligent or responsible for the accident, in whole or in part, his license or privilege shall be suspended and shall not be returned until the driver complies with the provisions of this chapter. This section shall not apply under the conditions stated in section 39–16–06 or:

"1. To a driver, if he is the owner of the motor vehicle involved in the accident and had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident, affording substantially the same coverage as is required for proof of financial responsibility *under this chapter.*

"2. To a driver, if not the owner of such motor vehicle, if there was in effect at the time of such accident an automobile liability policy or bond with respect to his operation of motor vehicle, affording substantially the same coverage as required for proof of financial responsibility *under this chapter.*

"3. To a driver if the liability of such driver for damages resulting from such accident is, in the judgment of the commissioner, covered by any other form of liability insurance policy or bond or certificate of self-insurance under section 39–16–32.

No such policy or bond shall be effective under this section unless by an insurance carrier or surety company authorized to do business in this state, except that if such motor vehicle was not registered in the state, or was a motor vehicle which was registered elsewhere than in this state at the effective date of the policy or bond, or the most recent renewal thereof, such policy or bond shall not be effective under this section unless the insurance carrier or surety company, if not authorized to do business in this state, shall execute a power of attorney authorizing the commissioner to accept service, on its behalf, of notice or process in any action upon such policy or bond arising out of such accident; provided, every such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than ten thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and, if the accident has resulted in injury to or destruction of property to a limit of not less than five thousand dollars because of injury to or destruction of property of others in any one accident. Upon receipt of notice of such accident, the insurance carrier or surety company which issued such policy or bond shall furnish for filing with the commissioner a written notice that such policy or bond was in effect at the time of such accident, or the department may rely upon the accuracy of the information and the required report of an accident as to the existence of insurance or a bond unless and until the department has reason to believe that the information is erroneous." [Emphasis added.]

Prior to the Legislature's revision of the financial responsibility law in 1967, the emphasized language in § 39–16–05, N.D.C.C., referred to insurance coverage as required by § 39–16–20, N.D.C.C. (repealed in 1967),[3]

---

3. The Legislature, in 1973, restored the reference to the policy coverage defined in § 39–16.1–11. It is clear from the available legislative history that failure to insert the cross-reference during the recodification of the financial responsibility laws in 1967 was

which defined a "motor vehicle liability policy" in the same language as is now found in § 39–16.1–11, N.D.C.C., which provides, in pertinent part:

"39–16.1–11. *Motor vehicle liability policy.*—1. A 'motor vehicle liability policy' as said term is used in this chapter shall mean an owner's or an operator's policy of liability insurance, certified as provided in sections 39–16.1–09 and 39–16.1–10 as proof of financial responsibility, and issued, except as otherwise provided in section 39–16.1–10, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

"2. Such owner's policy of liability insurance:

"a. Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and

"b. Shall insure the person named therein and any other person, as insured, using such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows: ten thousand dollars because of bodily injury to or death of one person in any one accident and subject to said limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and five thousand dollars because

of injury to or destruction of property of others in any one accident.

"3. Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle, either unlimited, or limited by excluding certain classes or types of motor vehicles, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance."

 In *Glascoe v. Bracksieck*, 85 N.W.2d 423 (N.D.1957), in paragraph 1 of the syllabus, this Court held:

"1. Mere changes in the arrangement of sections in the codification of statutes will not be regarded as altering the law unless the intent to do so is clear."

When the Legislature created Chapter 39–16.1, N.D.C.C., it did so in the same House Bill which both amended Chapter 39–16, N.D.C.C., and repealed certain sections thereof (including § 39–16–20), recodifying such sections in Chapter 39–16.1 [S.L.1967, ch. 313 (H.B. 547)]. We cannot say that such action evidenced a clear intent on the part of the Legislature to change the law.[4] We therefore conclude that, for the purposes of this case, § 39–16–05, N.D.C.C., must be interpreted as if it provided at the time of the accident, in pertinent part:

"39–16–05. *Suspension of license and when not applicable.*— . . . This section shall not apply under the conditions stated in section 39–16–06 or:

"1. To a driver, if he is the owner of the motor vehicle involved in the accident and had in effect at the time of such accident an automobile liability

merely an oversight, and no change in the meaning or application of § 39–16–05, N.D.C.C. was intended. Committee Minutes (House Transportation Committee), January 19, 1973; Committee Minutes (Senate Transportation Committee), February 22, 1973.

4. There is no reference in the legislative history of H.B. 547 which would indicate such an intent. *See*, Committee Minutes (House Transportation Committee), January 18, 1967; Committee Minutes (Senate Transportation Committee), February 10, 1967.

policy with respect to the motor vehicle involved in such accident, affording substantially the same coverage as is required for proof of financial responsibility under chapter 39–16.1." S.L. 1973, ch. 309, § 1.

Standing alone, Chapter 39–16 is intended to impose penalties against a motor vehicle owner or operator who is involved in an accident and does not subsequently establish that he is financially capable of responding in damages if he should thereafter be found liable for bodily injury or property damage sustained by any person in such accident. The principal sanctions imposed by § 39–16–05, N.D.C.C., however, will not apply, by the very terms of the statute itself, to an owner or operator having in effect an acceptable policy of liability insurance at the time of the person's first accident. Chapter 39–16.1, N.D.C.C., is designed to require a motor vehicle owner or operator who has already had an accident, or who has been convicted of certain traffic offenses, to establish proof of financial ability to respond in damages for any bodily injury or property damage which may occur as the result of *future* accidents. Chapter 39–16.1 sets out specific procedural requirements which an owner or operator must follow in establishing proof of financial responsibility, and also defines, in § 39–16.1–11, N.D.C.C., the type of insurance coverage which must be carried by the owner or operator to comply with requirements of Chapter 39–16.1.

In the instant case, Donald was not required to post proof of financial responsibility pursuant to Chapter 39–16.1 prior to this accident. Donald may have been required, however, to establish that he could respond in damages for any injuries sustained by another person as the result of his negligent operation of the snowmobile under the provisions of § 39–16–05, N.D.C.C., as a condition of the retention of his driver's license.

It is Donald's contention that State Farm's inclusion of a restrictive limitation on the class of potential beneficiaries, namely through the so-called "household, or family, exclusion clause" in his policy of liability insurance, violates public policy and the financial responsibility laws of North Dakota. For reasons hereinafter set forth, we agree.

The question of whether or not a state's financial responsibility laws require an insurance company to include the same omnibus coverage in policies of motor vehicle liability insurance voluntarily purchased by owners or operators as is required in policies issued and "certified" pursuant to mandatory laws designed to compel proof of financial responsibility before the owner or operator is involved in another motor vehicle accident has been considered by many other courts. Those courts, however, have reached opposite conclusions, generally despite the fact that the statutes in question were practically identical.

We have carefully examined the cases reported in an Annotation found at 8 A.L. R.3d 388 entitled "Policy Provision Extending Coverage to Comply with Financial Responsibility Act as Applicable to Insured's First Accident"; the cases cited by State Farm in support of its position; and the cases discussed in an Annotation found at 46 A.L.R.3d 1024 entitled "Validity, Construction, and Application of Provision of Automobile Liability Policy Excluding from Coverage Injury or Death of Member of Family or Household of Insured". In reviewing these decisions, we find that the courts in a majority of jurisdictions have concluded that such a requirement is not imposed on the issuance of insurance policies voluntarily purchased by a motorist. Two theories appear in those decisions which support the majority view: either a distinction between a statutorily required "motor vehicle liability policy" and a voluntary "automobile liability policy", *United States Fidelity & Guaranty Co. v. Walker*, 329 P.2d 852 (Okl.1958); or a finding that the particular policy in question would conform to financial responsibility statutes only when such policy was "certified" as such when the "insured" motorist was re-

quired to submit proof of financial responsibility for future accidents, *e. g., Lewis v. Mid-Century Ins. Co.*, 152 Mont. 328, 449 P.2d 679 (1968); *State Farm Mut. Auto. Ins. Co. v. Ward*, 340 S.W.2d 635 (Mo.Sup. 1960); *State Farm Mut. Auto. Ins. Co. v. Arghyris*, 189 Va. 913, 55 S.E.2d 16 (1949); 8 A.L.R.3d 388, 391–404.

A minority of States, however, have reached the opposite conclusion. They have found that the public policy of a State, as evidenced by its financial responsibility laws, requires that all motor vehicle liability policies contain the broad omnibus clause coverage. In 1957, the Supreme Court of California took the lead in articulating the minority view, declaring a restrictive endorsement in an insurance policy void as violating California's policy of omnibus coverage. In *Wildman v. Government Employees' Insurance Co.*, 48 Cal.2d 31, 307 P.2d 359, 364 (1957), the California Supreme Court concluded that California's public policy, as evidenced by financial responsibility laws similar to Chapters 39–16 and 39–16.1, N.D.C.C., was to make owners of motor vehicles financially capable of responding in damages to innocent victims who are injured or suffer property damage because of the negligent operation of motor vehicles.

In 1963, the Arizona Supreme Court agreed with the decision in *Wildman, supra*, rejecting "artful distinctions" between the phrases "motor vehicle liability policy", "automobile liability policy", or "policy of insurance". *Jenkins v. Mayflower Insurance Exchange*, 93 Ariz. 287, 380 P.2d 145, 147 (1963).[5] The Arizona Supreme Court concluded, in *Jenkins*, that to rule otherwise would be to frustrate the purpose of the Financial Responsibility Act, which purpose the Court had already described as follows:

> " 'The Financial Responsibility Act has for its principal purpose the protection of the public using the highways from financial hardship which may result from the use of automobiles by financially irresponsible persons.' [*Schecter v. Killingsworth*, 93 Ariz. 273, 380 P.2d 136 (March 1963).]"

We have carefully examined the statutes relied upon by courts supporting both the majority and the minority views, and find little to distinguish the Arizona and California statutes from the statutes in those States adhering to the "majority" position.[6] In essence, the only difference seems to be the particular court's willingness to apply public policy considerations when resolving the question of the validity of exclusion clauses which would not be valid if the policy were issued pursuant to mandatory financial responsibility laws. In contrast, we believe that Chapter 39–16, N.D.C.C., is more explicit in defining the type of liability insurance policy contemplated by the Legislature as security for a motorist's first accident, and is therefore more consistent with the rule applied by the California and Arizona Courts.

■ In *State v. Weigel*, 165 N.W.2d 695, 697≠698 (N.D.1969), this Court said:

> "In construing legislation generally it is our duty to attempt to determine legis-

---

**5.** We do not believe that *New York Underwriters Insurance Company v. Superior Court*, 104 Ariz. 544, 456 P.2d 914 (1969), detracts from the *Jenkins* reasoning. The Arizona Supreme Court simply concluded that the omnibus coverage defined by its statute did not prohibit the insured from contracting for the exclusion of coverage for bodily injury to himself. As discussed later in this opinion, we interpret our statutory omnibus clause differently.

**6.** *Compare* 66A Cal.Veh.Code, Div. 7, Ch. 1, 2, 3 (especially §§ 16020, 16050–16060, 16450–16453 (West 1971) (as derived from Cal.Veh.Code of 1935, §§ 402 through 416, with slight revisions to take into account court decisions); 9 Ariz.Rev.Stats. §§ 28–1141 through 28–1148, 28–1161 through 28–1178 (1956); *with* 3 Mont.Rev.Code § 53–401 *et seq.* (1947); 3 Mo.Rev.Stats. § 303.-010 *et seq.* (1969); 47 Okla.Stats.Ann. §§ 7–201 through 7–335 (1961); 7 Va.Code §§ 46.-1–442 through 46.1–514 (1950).

For an excellent summary of the legislative and judicial history of the California statutes, see *Contreras v. America, Compania General De Seguros, S.A.*, 48 Cal.App.3d 270, 121 Cal.Rptr. 694, 697–699 (Ct.App. 1975).

lative intent, and when that intent is directed toward an objective not prohibited by the state or federal constitutions, our construction of the legislation should be in aid of and compatible with this intent."

Furthermore, courts will endeavor to construe statutes so as to effectuate the legislative purpose which prompted their enactment. *Van Ornum v. Otter Tail Power Company*, 210 N.W.2d 207, 209 (N.D. 1973); *State ex rel. Eckroth v. Borge*, Syll. ¶ 4, 69 N.D. 1, 283 N.W. 521, 522 (1939). Every statute must be construed with reference to the policy intended to be accomplished. *Ulrich v. Amerada Petroleum Corp.*, 66 N.W.2d 397, 401 (N.D.1954); *State ex rel. Skeffington v. Siegfried*, 40 N.D. 57, 168 N.W. 62, 64 (1918). And, in *Austinson v. Kilpatrick*, 82 N.W.2d 388, 392 (N.D. 1957), a case involving the construction of a statute authorizing service of process on nonresident motor vehicle operators involved in an accident, this Court quoted with approval from *Jones v. Pebler*, 371 Ill. 309, 20 N.E.2d 592, 594, 125 A.L.R. 451, in *Austinson, supra* 82 N.W.2d at 392, that:

"'A primary purpose of statutory construction, is to ascertain the intention of the legislature. In determining this intent courts consider the language used, the evil to be remedied and the object to be attained.' [Citations omitted.]"

And this Court, in *Austinson*, stated:

"Such construction is favored which tends most fully to promote the object of the statute." 82 N.W.2d at 392.

In addition, the Legislature has established a policy that our Code is to be construed liberally. Section 1–02–01, N.D. C.C., provides, in pertinent part, that:

"*1–02–01. Rule of construction of code.*—. . . The code establishes the law of this state respecting the subjects to which it relates, and its provisions and all proceedings under it are to be construed liberally, with a view to effecting its objects and to promoting justice."

*State v. General Insurance Company of America*, 179 N.W.2d 123, 126 (N.D.1970).

The basic purpose for the Legislature's enactment of financial responsibility laws was to protect innocent victims of motor vehicle accidents from financial disaster. *Wildman v. Government Employees' Insurance Co.*, 48 Cal.2d 31, 307 P.2d 359 (1957); *Jenkins v. Mayflower Insurance Exchange*, 93 Ariz. 287, 380 P.2d 145 (1963). As the Legislative Research Committee [now designated as the Legislative Council] explained in the 1967 Report of the North Dakota Legislative Research Committee to the Fortieth Legislative Assembly, at page 93:

"Financial responsibility laws have as their objective the compensation of innocent victims of traffic accidents. Thus, they are more concerned with the solution of economic problems created by traffic accidents than with the prevention of traffic accidents."

We are not required, however, to base our conclusion solely on an application of the clear public policy expressed by the Legislature's enactment of the financial responsibility laws. We conclude that our laws are different from statutes commonly found in other jurisdictions, because the provisions dealing with financial responsibility for a driver's first accident (§ 39–16–05, N.D.C.C.) include as a basic point of reference the definition of a "motor vehicle liability policy" contained in § 39–16.1–11, N.D.C.C. In other words, the sanctions of § 39–16–05 will not apply to a motor vehicle owner or operator who establishes that he had, at the time of his first accident, a policy of "automobile liability insurance" in effect with respect to the motor vehicle involved in such accident, which policy affords "substantially the same coverage" as do policies issued in conformity with the mandatory requirements of Chapter 39–16.-1, N.D.C.C., when applicable.

In determining the application of § 39–16–05, we agree with the Supreme

Court of Arizona, which concluded in *Jenkins, supra,* that there is no difference between the phrases "automobile liability insurance", "motor vehicle liability policy", or "policy of insurance". We think it clear that the Legislature's purpose was to define the type of insurance coverage which would exempt a person from the sanctions imposed by § 39–16–05, and that the phrase "automobile liability insurance" does not limit the availability of that exemption to drivers involved in "automobile" accidents. Instead, we believe that all portions of the financial responsibility law (Chapters 39–16 and 39–16.1, N.D.C.C.) apply to all motor vehicles, as hereinbefore defined.

It therefore becomes necessary for us to determine what "substantially the same coverage" means. In *Darlington v. Studebaker-Packard Corporation,* 191 F.Supp. 438, 439–440 (N.D.Ind.1961), the United States District Court defined the phrase "substantially the same", saying:

" 'Substantially' means in substance; in the main; essentially, by including the material or essential parts [citation omitted]. The word 'substantially' is a relative term and should be interpreted in accordance with context of claim in which it is used [citation omitted].

"When we say a thing is 'substantially the same' we mean it is the same in all important particulars. If the change of words does not contribute to a new *result,* the change is not material and we can still say the new is 'substantially the same' as the old. [Emphasis in original.]"

■ In the instant case, therefore, the coverage in an insurance policy used to provide an exemption from the terms of § 39–16–05, N.D.C.C., is "substantially the same" as coverage mandated by § 39–16.1–11, N.D.C.C., when such policy is issued for the purposes of compliance with Chapter 39–16.1, N.D.C.C., if the coverage provided in the owner's or operator's policy is the same in all important particulars as the coverage required by § 39–16.1–11, N.D.C.C.

■ The three essential elements of coverage which a "motor vehicle liability policy" must provide, if issued pursuant to the terms of Chapter 39–16.1, N.D.C.C., are:

1. Limits of liability of not less than ten thousand dollars because of bodily injury or death to one person in any one accident; twenty thousand dollars because of bodily injury or death to two or more persons in any one accident; and five thousand dollars because of injury to or destruction of property in any one accident; and

2. Insuring the named insured and any other person driving said motor vehicle with the permission of the named insured; and

3. Insuring such persons against loss from the liability *imposed by law for damages arising out of the ownership, maintenance or use of such insured motor vehicle* within the United States of America or the Dominion of Canada.

Elements Number 2 and 3, above, constitute what is commonly referred to as the "Omnibus Clause", which means that territorial, driver, or beneficiary coverage restrictions imposed through the use of exclusion clauses by an insurance company are void. *Jenkins v. Mayflower Insurance Exchange, supra,* 380 P.2d at 146; *Wildman v. Government Employees Insurance Co., supra,* 307 P.2d at 364–365; *Atlantic National Insurance Company v. Armstrong,* 65 Cal.2d 100, 52 Cal.Rptr. 569, 416 P.2d 801 (1966).

We deem all three of the above-recited elements essential to the intended operation of our financial responsibility laws, especially § 39–16–05, N.D.C.C. The Legislature has specifically declared that an owner or operator of a motor vehicle involved in an accident is exempted from the application of § 39–16–05, N.D.C.C., only if he has in effect at the time of such accident—even if it is his first accident—a policy of liability insurance providing "substantially the same coverage" as outlined by § 39–16.1–11, N.D.C.C. As noted above, such coverage must

insure all permissive operators against loss for liability, within certain monetary limits, for damages imposed by law. The Supreme Court of California, in *Atlantic National Insurance Company v. Armstrong, supra,* addressed itself to the question of an exclusion which operated to limit the class of persons whose injuries were compensable under the policy and held that the financial responsibility statute under consideration not only prescribed minimum monetary liability limits, but also defined the risks which must be covered. In reaching such conclusion, the California Supreme Court said, in *Armstrong, supra,* 52 Cal.Rptr. at 574–575, 416 P.2d at 805–806:

"Plaintiff insists that even though Stanley is an insured driver under the policy, the company has no obligations with regard to the action brought by McKeown's heirs against Stanley's estate because of the exclusion from the policy of liability arising out of injuries to occupants of the insured vehicle. It is urged that motor vehicle liability insurers may at their discretion limit the class of persons whose injuries are compensable, without violating any statute in so doing.

"The foregoing contention places too narrow a construction on the language of Vehicle Code section 415 and on the relevant decisions. A primary purpose of financial responsibility laws is to protect 'that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of the highways by others.' (*Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 434, 296 P.2d 801, 808, 57 A.L.R.2d 914 . . . . [additional citations omitted]. This goal is no less subverted by limiting the class of persons who are insured. Either type of exclusion forces the injured person to rely exclusively upon the financial resources of the driver or owner in seeking compensation for his injuries. Thus, all the considerations which underlie *Wildman* [307 P.2d 359 (1957)] and *Interinsurance Ex-*

change [*Interinsurance Exchange v. Ohio Cas. Ins. Co.,* 58 Cal.2d 142, 154, 23 Cal. Rptr. 592, 373 P.2d 640 (1962)] apply with equal force to the case at hand.

"It is true that the relevant statutes omit any detailed description of the persons whose injuries must be compensated under a motor vehicle liability policy, while specifying that permissive drivers must be covered. However, it does not follow that the Legislature intended to leave the description of the class of persons whose injuries are compensable wholly to the discretion of private parties. As has been said with regard to an analogous issue, 'The statute is founded upon principles of public policy, and an anomalous situation would be created if the rights of third parties, for whose protection the law was adopted, could be hindered, delayed, or defeated by * * private agreements * * *.' (*Malmgren v. Southwestern A. Ins. Co.* (1927) 201 Cal. 29, 33–34, 255 P. 512, 513.)"

██ We agree with and adopt the reasoning of the California Supreme Court in *Armstrong, supra.* We therefore conclude, consistent with public policy and the statutes of North Dakota, that all policies of liability insurance used to satisfy the security requirements of § 39–16–05, N.D.C.C., must contain the same omnibus coverage defined by § 39–16.1–11, N.D.C.C. Otherwise the coverage would not be "substantially the same" as coverage required by Chapter 39–16.1, N.D.C.C., as that phrase is used in § 39–16–05, N.D.C.C.

██ We must therefore determine in the instant case whether or not the policy issued by State Farm is a policy which was intended to permit an owner or operator of a motor vehicle who was involved in an accident to exempt himself from the provisions of § 39–16–05, N.D.C.C. We conclude that it was such a policy.

By its very terms, the policy purports to comply with any state financial responsibility laws "when applicable", although the

language of the "Conformity Clause" is couched in terms of "future financial responsibility" and purports to operate only when "certified" by the insurance company as proof of financial responsibility.

In interpreting the terms of a policy of insurance, we are guided by the familiar rule that, as an adhesion contract drawn by the company, it must be construed most strongly against the insurance company. *Scott v. National Travelers Life Insurance Co.*, 171 N.W.2d 749, 751 (N.D.1969); *Bekken v. Equitable Life Assur. Soc.*, 70 N.D. 122, 293 N.W. 200, 212 (1940); *State ex rel. Hagen, Etc. v. Bismarck Tire Ctr.*, 234 N.W.2d 224, 225–226 (N.D.1975) (discusses treatment by the courts of adhesion contracts). Furthermore, the Supreme Court of California, in *Wildman, supra*, 307 P.2d at 362, quoted with approval from *Continental Cas. Co. v. Phoenix Constr. Co.*, 46 Cal.2d 423, 296 P.2d 801, 57 A.L.R.2d 914 (1956), which set forth the criteria for interpreting motor vehicle liability policies:

> " 'It is elementary in insurance law that any ambiguity or uncertainty in an insurance policy is to be resolved against the insurer. . . . If semantically permissible, the contract will be given such construction as will fairly achieve its object of securing indemnity to the insured for the losses to which the insurance relates. . . . If the insurer uses language which is uncertain any reasonable doubt will be resolved against it; if the doubt relates to extent or fact of coverage, whether as to peril insured against . . ., the amount of liability . ., or the person or persons protected . ., the language will be understood in its most inclusive sense, for the benefit of the insured.' [Citations omitted.]"

Having in mind such rule, as well as the public policy hereinbefore discussed, we conclude that the "Conformity Clause" in the insurance policy issued by State Farm to Donald and Maurine, although somewhat artfully drawn with an apparent intention to restrict coverage as much as possible, is a sufficient basis on which to hold that such a clause does indeed warrant that the policy in question, whether "certified" or not, complies with *any* applicable financial responsibility laws. Consequently, § 39–16–05, N.D.C.C., *is* the "applicable" financial responsibility law. We further conclude that the certification prerequisite set forth in the Conformity Clause refers only to certification under Chapter 39–16.1, N.D. C.C., and that such certification is not required under Chapter 39–16, N.D.C.C. The only portions of Chapter 39–16.1 that have been effectively incorporated into § 39–16–05 are those portions of § 39–16.1–11 which define the coverage required in a liability insurance policy issued with respect to a motor vehicle owner or operator involved in an accident. The procedural requirements have not been incorporated into Chapter 39–16, nor were they intended to be so incorporated.

However, even if the Conformity Clause were not part of the insurance policy issued by State Farm, we would nonetheless conclude that the terms of a motor vehicle liability policy issued and delivered in this State must provide at least the minimum coverage outlined in § 39–16.1–11. Such provisions are express declarations by the Legislature of the public policy of this State, and as such are implicit in the contract of insurance. *Wildman v. Government Employees' Insurance Co.*, 48 Cal.2d 31, 307 P.2d 359 (1957); *Jenkins v. Mayflower Insurance Exchange,* 93 Ariz. 287, 380 P.2d 145 (1963). It would be anomalous, indeed, to permit an insurance company to issue a policy which does not protect the policyholder from the suspension or loss of his driver's license, when it seems logical to conclude that such policies of insurance are purchased with that very thought in mind.

We therefore hold that a "household, or family, exclusion clause" contained in a policy of motor vehicle liability insurance issued and delivered in this State is void as violative of public policy and the statutes of this State.

By so holding, we are now required to determine the extent of State Farm's liability in this action. By the very terms of the policy, State Farm's maximum liability is for the sum of $100,000 for bodily injury or death to one person in any one accident; $300,000 for bodily injury or death to two or more persons in any one accident; and $25,000 for property damage in any one accident.

State Farm contends, however, that its liability is limited by subsection 7 of § 39–16.1–11, N.D.C.C., to the liability limits set forth in subsection 2(b) of § 39–16.1–11, and, in any event, that it has the statutory right, under subsection 8 of § 39–16.1–11 to seek recovery from the named insured of any amounts paid on behalf of the named insured, pursuant to the provisions of Chapter 39–16.1, N.D.C.C. We disagree.

The only portions of Chapter 39–16.1 incorporated into § 39–16–05, and therefore applicable in this case, are those portions of subsections 1, 2 and 3 of § 39–16.1–11 which define the coverage required in a motor vehicle liability insurance policy. There is no certification requirement contained in Chapter 39–16, nor is there a provision which limits the insurance company's potential liability to a statutorily defined maximum. The only portion of § 39–16.1–11 applicable to this case is that portion of such section defining the *coverage* of a "motor vehicle insurance policy". Such coverage includes certain *minimum* limits of liability, plus the Omnibus Clause. By the policy's specific terms, the provisions contained in subsections 7 and 8 of § 39–16.1–11 are activated only when the policy is "*certified* as proof of *future* financial responsibility . . . while such proof is required during the policy period [emphasis added]".

 We therefore hold that State Farm is liable in this action for the damages incurred by Maurine up to a maximum limit of $100,000, and that the named insured is not liable to State Farm for said amount because the insurance company would have been obligated to pay such claim even if the paragraph entitled "Financial Responsibility Laws" had not been a part of the policy as issued. The fact that Maurine is herself a "named insured" under the terms of the insurance policy in question does not change our conclusion. Coverage, according to § 39–16.1–11(3), N.D.C.C., must be extended to "liability imposed . . . by law". Donald's liability in the instant case is clearly imposed by law. To hold otherwise would be inconsistent with our earlier determination that public policy and the statutes do not permit insurance companies to limit the class of beneficiaries in a policy of motor vehicle liability insurance. The fundamental purpose for the enactment of financial responsibility laws—namely, protecting innocent accident victims from financial hardship—is no less frustrated when the beneficiary limitation applies to the "named insured" than when it applies to a broader and more comprehensive group, *i. e.*, the family or household of the named insured. In either case, an innocent accident victim may suffer financial hardship if such clauses are validated. Consequently, we find that such an exclusion also violates public policy and the statutes, and is therefore void. *Wildman v. Government Employees Insurance Co., supra; Atlantic National Insurance Company v. Armstrong, supra.*

Having determined State Farm's liability, we also find it necessary to reverse the judgment of the district court as to Donald's second issue. Since we have held that Donald was insured at the time of the accident, § 26–02–42, N.D.C.C., has no bearing on the result in this case. We do not mean to imply, however, that "uninsured motorist coverage", as defined in § 26–02–42, N.D.C.C., is not required on policies of liability insurance covering snowmobiles. We determine only that we need not consider such issue in this case, because we have already concluded that the person responsible for Maurine's injuries, namely, Donald, was insured.

The judgment of the district court is therefore reversed.

ERICKSTAD, C. J., and VOGEL and SAND, JJ., concur.

PEDERSON, Judge (dissenting).

I dissent. Justice Hopkins of the New York Supreme Court, Appellate Division, in his analysis of "Public Policy and the Formulation of a Rule of Law," published in 37 Brooklyn L.Rev. 323 (1971), stressed that public policy, like all terms of undefinable breadth, may be used as a cover for uncertain reasoning and that if public policy is to be used as a ground for judicial decision, it must be justified by recourse to an analysis of the reasons which are the foundation for the policy.

I am not convinced that legislative intent, in providing for proof of financial responsibility, can be logically carried over to the general law covering liability insurance contracts. When the courts engage in lawmaking activities, they should confine themselves to the interstices. The rationality should not be based upon a determination of what is good or bad in the light of society's goals unless the Legislature has disclosed its intent.

In over twenty-one years of working with the financial responsibility provisions of the motor vehicle laws, I failed to encounter any real evidence that the Legislature intended, or even considered, that every motor vehicle liability contract must provide the coverage necessary to qualify it as proof of financial responsibility. On the contrary, it is common knowledge that the premiums charged for certified proof of financial responsibility coverage far exceed those which the public would be willing, or is accustomed, to pay for liability coverage.

The majority opinion apparently finds ambiguity in the contract language, and that because an insurance contract is a contract of adhesion it must be construed most strongly against the insurance company. Although I agree entirely with the legal principle stated, I find no ambiguity in the contract.

Finally, the majority state that there is no certification requirement contained in Chapter 39–16, NDCC. I interpret § 39–16–05, NDCC, as requiring certification, although I agree that it is not the same type of certification required by Chapter 39–16.-1, NDCC.

The judgment should have been affirmed.